**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

DAVID ATREYEL CAMPBELL,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　　**Civil Action No. 5:18-00357**
　　　　　　　　　　　　　　　　　　　)
MS. LESLIE, *et al.*,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　)

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court is Plaintiff's Application to Proceed Without Prepayment of Fees (Document No. 1), filed on February 26, 2018. Having examined Plaintiff's Complaint, the undersigned has concluded that Plaintiff fails to state a claim for which relief can be granted in this matter and therefore respectfully recommends that Plaintiff's Application to Proceed Without Prepayment of Fees be denied and this matter be dismissed.

**FACTUAL BACKGROUND**

On February 26, 2018, Plaintiff, acting *pro se*,[1] filed his Application to Proceed *in Forma Pauperis* and Complaint for alleged violations of his constitutional and civil rights pursuant to Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document Nos. 1 and 2.) In his Complaint, Plaintiff names the following as Defendants: (1) Ms. Leslie, DHO FCI Beckley; (2) Mr. Sweeney, SIS FCI Beckley; (3) Mr. Toney, SIS FCI Beckley; (4) Ms. Smith, Case Manager FCI Beckley; (5) Mrs. Stenett,

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed

Unit Manager FCI Beckley; (6) Dr. Weaver, Chief Psychologist FCI Beckley; (7) Mrs. Saad, Warden FCI Gilmer; (8) Mrs. Parke-Davis, Unit Manager FCI Gilmer; and (9) FBOP. (Document No. 2.) Plaintiff alleges that Defendants subjected him to verbal abuse, harassment, and unconstitutional conditions of confinement. (Id., p. 4.) Plaintiff explains that while at FCI Beckley, he was placed in the Special Housing Unit ["SHU"] on January 4, 2017. (Id., p. 4.) Plaintiff acknowledges that he was issued an Incident Report on January 12, 2017, for violating Prohibited Act Code 196. (Id.) Plaintiff states that he was interviewed by Counselor Brown on January 15, 2017, and Plaintiff declared his innocence and requested that witnesses be called. (Id.) Plaintiff acknowledges that his disciplinary hearing was conducted on February 18, 2017, and Plaintiff continued to maintain his innocence. (Id.) Plaintiff complains that DHO Leslie refused Plaintiff's request to call witnesses and determined Plaintiff violated Prohibited Code Violation 111A. (Id., p. 7.) Plaintiff states that he was sanctioned to 30 days segregation, 180 day loss of e-mail privileges, 90 day loss of phone privileges, and 41 day loss of good time credit. (Id.) Plaintiff complains that he was confined in the SHU for 97 days. (Id.) As a result of the forgoing, Plaintiff states that he was expelled from RDAP by Dr. Weaver for not accepting responsibility for his actions concerning the Prohibited Code Violation. (Id.) Plaintiff explains that his recommended RRC placement was reduced from 180 days to 30 – 91 days. (Id., p. 5.) During his placement in SHU, Plaintiff complains that he was denied contact with loved ones, subjected to verbal abuse by staff, and confined in a cell for 23 hours a day. (Id.) Plaintiff alleges that he appealed the DOH's decision to the Regional Office and Plaintiff was granted a new DHO hearing. (Id.) Plaintiff complains that at the time of the Regional Office's decision, Plaintiff only had "14 days left until his RRC release date and the damage had already been done." (Id.)

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

As relief, Plaintiff requests monetary damages. (Id., p. 7.)

## STANDARD

Pursuant to 28 U.S.C. § 1915A, the Court is required to screen each case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. On screening, the Court must recommend dismissal of the case if the complaint is frivolous, malicious or fails to state a claim upon which relief can be granted. A "frivolous" complaint is one which is based upon an indisputably meritless legal theory. Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992). A "frivolous" claim lacks "an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325, 109 S.Ct. 1827, 1831 - 32, 104 L.Ed.2d 338 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." Id., 490 U.S. at 327, 109 S.Ct. at 1833. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." Id., 490 U.S. at 327 - 328, 109 S.Ct. at 1833. A complaint therefore fails to state a claim upon which relief can be granted factually when it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. With these standards in mind, the Court will assess Plaintiff's allegations in view of applicable law.

This Court is required to liberally construe *pro se* documents, holding them to a less stringent standard than those drafted by attorneys. Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); Loe v. Armistead, 582 F.2d 1291, 1295 (1978). Liberal construction, however, "does not require courts to construct arguments or theories for a *pro se* plaintiff because this would place a court in the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Miller v. Jack, 2007 WL 2050409, at * 3 (N.D.W.Va. 2007)(citing Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.1978)).

3

Further, liberal construction does not require the "courts to conjure up questions never squarely presented to them." Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). In other words, a court may not construct legal argument for a plaintiff. Small v. Endicott, 998 F.2d 411 (7th Cir.1993). Finally, the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a claim currently cognizable in a federal district court. Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir.1990)). Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992); also see Goode v. Central Va. Legal Aide Society, Inc., 807 F.3d 619 (4th Cir. 2015).

## ANALYSIS

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05; See also Carlson v. Green, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980)(extending Bivens to Eighth Amendment claims); Davis v. Passman, 442 U.S. 228, 239 n. 18, 99 S.Ct. 2264, 2274 n. 18, 60 L.Ed.2d 846 (1979)(extending Bivens to allow citizen's recovery of damages resulting from a federal agent's violation of the Due Process Clause of the Fifth Amendment.) A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury

4

is necessary for there to be liability. A plaintiff asserting a claim under <u>Bivens</u> must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to <u>Bivens</u>. <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, <u>Bivens</u> claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); <u>Berger v. Pierce</u>, 933 F.2d 393, 397 (6th Cir. 1991); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

1.    **<u>Failure to Exhaust</u>:**

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); <u>Booth v. Churner</u>, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison

---

[3] 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available

administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[T]here is no futility exception to the PLRA's exhaustion requirement." Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin , 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the

---

are exhausted.

good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(overruled on other grounds)(a Section 1983 action, citing numerous cases). The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: line"The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not

precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in <u>Anderson</u>, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

For <u>Bivens</u> purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." <u>Dale v. Lappin</u>, 376 F.3d at 655 (internal citations omitted); <u>also see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. <u>Id.</u> Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to

8

an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his form Complaint, Plaintiff acknowledges that he did not exhaust his available administrative remedies. (Document No. 2, p. 3.) Specifically, Plaintiff acknowledges that FCI Beckley has a prisoner grievance procedure, but he did not present the facts relating to his complaint in the prisoner grievance procedure. (Id.) Thus, it is apparent from the face of the Complaints that Plaintiff failed to fully exhaust his administrative remedies prior to filing his Complaints. See Custis, 851 F.3d. at 361; Banks, 694 Fed. Appx. at 160. To the extent Plaintiff

requests that this action be stayed pending exhaustion, Plaintiff's request should be denied. As stated above, PLRA requires that inmates exhaust available administrative remedies *prior* to filing civil actions. Accordingly, the Court may not stay the above action pending exhaustion. See Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005)("a prisoner may not file a lawsuit before exhausting his administrative remedies, even if he exhausts those remedies while the litigation is pending."); Freeman, 196 F.3d at 645("The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Brown v. Zeigler, 2013 WL 4500473, * 10 (S.D.W.Va. Aug. 20, 2013)(J. Berger)("Because exhaustion is a prerequisite of filing suit, administrative remedies must be exhausted *before* filing a complaint in federal court, not after or contemporaneous therewith.")(emphasis in original). Finally, there is no indication or allegation by Plaintiff that the administrative remedy process was unavailable. The undersigned, therefore, respectfully recommends that Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies pursuant to the PLRA. Notwithstanding the foregoing, the undersigned will briefly consider Plaintiff's claims.

**2.    Eighth Amendment:**

The undersigned views Plaintiff's Complaint as setting forth a claim under the Eighth Amendment. As a general matter, punishments prohibited under the Eighth Amendment include those that "involve the unnecessary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)(quoting Gregg v. Georgia, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). "It not only outlaws excessive sentences but also protects inmates from inhumane treatment and conditions while imprisoned." Williams v.

Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). Under the Eighth Amendment, sentenced prisoners are entitled to "adequate food, clothing, shelter, sanitation, medical care and personal safety." Wolfish v. Levi, 573 F.2d 118, 125 (2d Cir. 1978), rev'd on other grounds, Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, sentenced prisoners are entitled to reasonable protection from harm at the hands of fellow inmates and prison officials under the Eighth Amendment. See Farmer v. Brennan, 511 U.S. 825, 832-34, 114 S.Ct. 1970, 1976-77, 128 L.Ed.2d 811 (1994); Trop v. Dulles, 356 U.S. 86, 102, 78 S.Ct. 590, 598-99, 2 L.Ed.2d 630 (1958); Woodhous v. Commonwealth of Virginia, 487 F.2d 889, 890 (4th Cir. 1973). Inmates' claims, therefore, that prison officials disregarded specific known risks to their health or safety are analyzed under the deliberate indifference standard of the Eighth Amendment. See Pressly v. Hutto, 816 F.2d 977, 979 (4th Cir. 1987); Moore v. Winebrenner, 927 F.2d 1312, 1316 (4th Cir. 1991) cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991)(Stating that supervisory liability may be imposed where prison supervisors "obdurately," "wantonly," or "with deliberate indifference" fail to address a known pervasive risk of harm to an inmate's health or safety). To establish a violation of the Eighth Amendment in the context of a challenge to conditions of confinement, an inmate must allege (1) a "sufficiently serious" deprivation under an objective standard and (2) that prison officials acted with "deliberate indifference" to the inmate's health and safety under a subjective standard. Wilson v. Seiter, 501 U.S. 294, 297 - 99, 111 S.Ct. 2321, 2323 - 2325, 115 L.Ed.2d 271 (1991). A sufficiently serious deprivation occurs when "a prison official's act or omission . . . result[s] in the denial of the minimal civilized measure of life's necessities.'" Id. at 298, 111 S.Ct. 2321 (citing Rhodes v. Chapman, 452 U.S. at 347, 101 S.Ct. 2392)."In order to establish the imposition of cruel and unusual punishment, a prisoner must

11

prove two elements – that 'the deprivation of [a] basic human need was objectively sufficiently serious,' and that 'subjectively the officials act[ed] with a sufficiently culpable state of mind.'" Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995)(quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)(quotation omitted)). See also White v. Gregory, 1 F.3d 267, 269 (4th Cir. 1991)("In *Strickler*, we held that a prisoner must suffer 'serious or significant physical or mental injury' in order to be 'subjected to cruel and unusual punishment within the meaning of the' Eighth Amendment.")

### A. *Verbal Abuse and Harassment.*

Plaintiff contends that Defendants violated his constitutional rights by verbally harassing him. (Document No. 2.) Assuming Plaintiff's allegations as true, Plaintiff has failed to state a constitutional claim. First, Plaintiff fails to allege that he was incarcerated under conditions imposing a substantial risk of serious harm. Second, Plaintiff fails to allege facts sufficient to satisfy the subjective component of deliberate indifference. To satisfy the subjective component, Plaintiff must allege that each Defendant was consciousness of the risk of harm to him. See Farmer, supra, 511 U.S. at 840, 114 S.Ct. at 1980. Plaintiff, however, fails to allege that each Defendant knew of and disregarded an excessive risk to his health or safety. Furthermore, Plaintiff does not indicate that he suffered any serious injury as a result of Defendants' alleged verbal abuse or harassment. The verbal harassment or abuse of an inmate by prison guards, without more, is insufficient to state a constitutional deprivation. Ivey v. Wilson, 832 F.2d 950, 954-55 (6th Cir. 1987); also see Lindsey v. O'Connor, 2009 WL 1316087, at * 1 (3rd Cir. (Pa.))(holding that "[v]erbal harassment of a prisoner, although distasteful, does not violate the Eighth Amendment"); Purcell v. Coughlin, 790 F.2d 263, 265 (2nd Cir. 1986)(stating that

name-calling does not rise to the level of a constitutional violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)(finding that a sheriff's threats to hang a prisoner were insufficient to state a constitutional deprivation). Based on the foregoing, the undersigned finds that Plaintiff has failed to state a cognizable claim under the Eighth Amendment for which relief can be granted.

**B.     *Conditions of Confinement.***

Plaintiff contends that the conditions of his confinement was cruel and unusual because he was confined to a dirty cell. (Document No. 2.) In Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991), the Supreme Court held that "some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets." Plaintiff's complaint of being confined in a dirty cell is insufficient to state a constitutional violation. See also Hadley v. Peters, 70 F.3d 117 (7th Cir. 1995), cert. denied, 517 U.S. 1111, 116 S.Ct. 1333, 134 L.Ed.2d 484 (1996)("Prisons are not required to provide, and prisoner cannot expect, the services of a good hotel."). The conditions of confinement complained of by Plaintiff amounts to nothing more than a "routine discomfort [that] is part of the penalty that criminal offenders pay for their offenses against society." Strickler, 989 F.2d at 1380. The Eighth Amendment "does not mandate comfortable prisons." Rhodes v. Chapman, 452 U.S. at 349, 101 S.Ct. at 2400. "To the extent . . . conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Id. at 347, 101 S.Ct. 2392; Shakka v. Smith, 71 F.3d 162, 166

13

(4th Cir. 1995)(citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)); <u>Lopez v. Robinson</u>, 914 F.2d 486, 490 (4th Cir. 1990). Furthermore, Plaintiff fails to allege any injury resulting from the challenged condition. <u>Strickler</u>, 989 F.2d at 1381(an inmate "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions."); <u>see also</u> <u>White v. Gregory</u>, 1 F.3d 267, 269 (4th Cir. 1993)(prisoner's Eighth Amendment claim should be dismissed if he fails to allege a serious physical or mental injury resulting from the conditions of confinement). Therefore, the undersigned finds that Plaintiff has failed to state a claim under the Eighth Amendment for which relief can be granted.

**C.    *Segregation.***

Plaintiff contends that his placement in segregation resulted in cruel and unusual punishment prohibited under the Eighth Amendment of the United States Constitution. (Document No. 2.) The Fourth Circuit stated as follows respecting the constitutionality of holding inmates in segregation for long periods of time in <u>In re Long Term Administrative Segregation of Inmates Designated as Five Percenters</u>, 174 F.3d 464, 472 (4th Cir. 1999), <u>cert. denied</u>, <u>Mickle v. Moore</u>, 528 U.S. 874, 120 S.Ct. 179, 145 L.Ed.2d 151 (1991):

> [T]he isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable. Indeed, this court has noted that "isolation from companionship, restriction on intellectual stimulation[,] and prolonged activity, inescapable accompaniments of segregated confinement, will not render [that] confinement unconstitutional absent other legitimate deprivations." <u>Sweet v. South Carolina Dep't of Corrections]</u>, 529 F.2d at 861 (internal quotation marks omitted).
>
> Moreover, the indefinite duration of the inmates' segregation does not render it unconstitutional. ***[L]ength of time is "simply one consideration among many" in the Eighth Amendment inquiry. <u>Hutto v. Finney</u> , 437 U.S. 678, 687, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); <u>see Sweet</u>, 529 F.2d at 861-62. ***Depression and anxiety are unfortunate concomitants of incarceration; they do not, however, typically constitute the "extreme deprivations . . . required to make out a

conditions-of-confinement claim." Hudson v. McMillian, 503 U.S. 1, 8-9, 122 S.Ct. 995, 117 L.Ed.2d 156 (1992). A depressed mental state, without more, does not rise to the level of "serious or significant physical or emotional injury" that must be shown to withstand summary judgment on an Eighth Amendment charge. Strickland [v. Walters], 989 F.2d at 1381; see Lopez v. Robinson, 914 F.2d 486, 490 (4th Cir. 1990).

In view of the foregoing authority, Plaintiff clearly does not state facts in support of his Eighth Amendment claim that would entitle him to relief. Plaintiff alleges that Defendants subjected him to cruel and unusual punishment by placing him in disciplinary segregation for 97 days. (Document No. 2.) The undersigned notes that Plaintiff's confinement in segregation was for a short, specific period of time. Although Plaintiff may have been inconvenienced in a number of ways as a result of his placement in segregation, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

### D.    *E-mail and Telephone Privileges.*

Plaintiff contends that the restriction on his e-mail and telephone privileges resulted in cruel and unusual punishment prohibited under the Eighth Amendment of the United States Constitution. In Overton v. Bazzetta, 539 U.S. 126, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003), the United States Supreme Court held that a prison policy that "uses withdrawal of visitation privileges for a limited period as a regular means of effecting prison discipline" does not result in cruel and unusual punishment. Overton v. Bazzetta, 539 U.S. 126, 137-38, 123 S.Ct. 2162, 2170, 156 L.Ed.2d 162 (2003)(finding a two-year deprivation of visitation privileges did not violate the Eighth Amendment). The Supreme Court explained as follows:

This is not a dramatic departure from accepted standards for conditions of confinement. Nor does the regulation create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety. Nor does it involve the infliction of pain or injury, or deliberate indifference to the risk that it might occur. If the withdrawal of all visitation privilege were permanent or for a

15

much longer period, or if it were applied in an arbitrary manner to a particular inmate, the case would present different consideration.

Id., 539 U.S. at 137, 123 S.Ct. at 2170(citations omitted).

In the instant case, Plaintiff alleges that he e-mail privileges for 180 days and telephone privileges for 90 days as a sanction for violating Offense Code 111. (Document No. 2.) Thus, Plaintiff's visitation and telephone privileges were suspended for a limited period of time. The Court finds that a 180-day suspension of Plaintiff's e-mail privileges and a 90-day suspension of his telephone privileges as a means of effecting prison discipline, is not a dramatic departure from accepted conditions of confinement. See Thomas v. Drew, 365 Fed.Appx. 485, 488 (4th Cir. 2010)(no Eighth Amendment violation where inmate's telephone privileges were suspended for more than 50 years as a sanction for "misuse of telephone"); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *10 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)(no Eighth Amendment violation where an inmate's visitation privileges were suspended for more than two-years following eleven major disciplinary convictions). Further, Plaintiff does not allege that he has suffered a significant injury or experienced an extreme deprivation of a basic human need. Although the suspension of Plaintiff's e-mail and telephone privileges is restrictive, his allegations do not present a claim of constitutional magnitude for which relief can be granted.

**3.**    **No Due Process Violation:**

To determine whether an inmate retains a certain liberty interest, the Court must look to the nature of the claimed interest and determine whether the Due Process Clause applies. See Board of Regents v. Roth, 408 U.S. 564, 570-71, 92 S.Ct. 2701, 2705-06, 33 L.Ed.2d 548 (1972). An inmate holds a protectable right in those interests to which he has a legitimate claim of

16

entitlement. <u>Greenholtz v. Inmates of Nebraska Penal and Corr. Complex</u>, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979)(quoting <u>Roth</u>, 408 U.S. at 577, 92 S.Ct. 2709). In <u>Gaston</u>, the Fourth Circuit determined that an inmate possesses a claim of entitlement in those interests "which were not taken away expressly or by implication, in the original sentence to confinement." <u>Id.</u> at 343. The Supreme Court held in <u>Sandin v. Conner</u>, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), that in order to show the deprivation of a liberty interest protected by the Due Process Clause, an inmate must show either that: (1) the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause or (2) the confinement creates an atypical or significant hardship in relation to the ordinary incidents of prison life. <u>Id.</u>, 515 U.S. at 484, 115 S.Ct. at 2300 (citations omitted). Absent allegations indicating that there has been a restraint upon the inmate's freedom which imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," the inmate's claims have no merit. <u>Id.</u>

## A.    *Liberty Interest in Placement into General Population.*

Applying the principles set forth in <u>Sandin</u>, the undersigned finds Plaintiff's placement in segregation is neither a condition which exceeded his sentence in an unexpected manner nor creates an atypical or significant hardship in relation to the ordinary incidents of prison life. Although Plaintiff appears to challenge the appropriateness for his placement in segregation, nothing in the record indicates that Plaintiff's conditions of confinement in segregation were atypical or resulted in a significant hardship.[4] Segregation, in and of itself, does not deprive an

---

[4] In *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997), the Fourth Circuit determined that the following conditions in administrative segregation did not implicate Plaintiffs' liberty interest:

17

inmate of a liberty interest or create an atypical hardship. See <u>Beverati v. Smith</u>, 120 F.3d 500, 502 (4th Cir. 1997). Furthermore, the Due Process Clause does not give an inmate a liberty interest in a certain prison classification. <u>See</u> <u>Hewitt v. Helms</u>, 459 U.S. 460, 477 n. 9, 103 S.Ct. 864, 874 n. 9, 74 L.Ed.2d 675 (1983)(stating that the "transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"), overruled in part by <u>Sandin</u>, 515 U.S. 482-83, 115 S.Ct. 2293; <u>Meachum v. Farno</u>, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)(stating that the transfer of an inmate to a higher security facility does not violate a liberty interest); and <u>Slezak v. Evatt</u>, 21 F.3d 590, 594 (4th Cir. 1994)(citing <u>Montanye v. Haymes</u>, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976))(the federal Constitution "vests no liberty interest in inmates in retaining or receiving any particular security or custody status as long as challenged conditions or degree of confinement is within sentence imposed and is not otherwise violative of Constitution"). Thus, Plaintiff's claim of a liberty interest in remaining free of segregation or in the fact of his confinement in segregation is without merit. Accordingly, the undersigned finds that Plaintiff's claim is without merit.

---

...cells were infested with vermin; were smeared with human feces and urine; and were flooded with water from a leak in the toilet on the floor above. And, [the inmates] assert, they were forced to use their clothing and shampoo to clean the cells. In addition, Inmates maintain that their cells were unbearably hot and that the food they received was cold. Furthermore, Van Aelst submitted an affidavit indicating that those assigned to administrative segregation did not receive clean clothing, linen, or bedding as often as required by the regulations governing administrative segregation; that they were permitted to leave their cells three to four times per week, rather than seven, and that no outside recreation was permitted; that there were no educational or religious services available; and that food was served in considerably smaller portions.

**B.    *Liberty Interest in Retaining Prison Privileges*.**

To the extent Plaintiff alleges a liberty interest in retaining his e-mail and telephone privileges, the undersigned finds that Plaintiff's claim is without merit. The denial of privileges and confinement in segregation are matters clearly contemplated by Plaintiff's original sentence. See Gaston, 946 F.2d at 343 (To safely and efficiently run the prison, prison officials maintain broad discretion over an inmate's "location, variations of daily routines, changes in conditions of confinement (including administrative segregation), and the denial of privileges"); Hatch v. District of Columbia, 184 F.3d. 846, 855 (D.C. Cir. 1999)(stating that "the transfer of an inmate to less amenable and more restrictive quarter for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence"); and Gholson v. Murry, 953 F. Supp. 709, 716 (E.D.Va. 1997)(finding that the denial of work opportunities and certain education programs did not impose an atypical and significant hardship on inmates placed in segregation in relation to the ordinary incidents of prison life). Furthermore, it is well established that an inmate has no absolute right to prison e-mail or telephone privileges. See Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109, S.Ct. 1904, 104 L.Ed.2d 506 (1989)("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence and therefore is not independently protected by the Due Process Clause."); Smith v. Roper, 12 Fed.Appx. 393, 396 (7th Cir. 2001), cert. denied, 534 U.S. 1093, 122 S.Ct. 839, 151 L.Ed.2d 718 (2002)("In light of *Sandin*, the deprivations that Smith suffered as a result of the disciplinary proceedings - namely, 22 days in segregation, a six-month loss of privileges associated with his demotion to C class, and six days without phone privileges - do not implicate a liberty interest."); Freitas v. Ault, 109 F.3d 1335, 1337-38 (8th Cir.

19

1997)(finding that an involuntary transfer to a higher-security facility and loss of work and phone privileges did not constitute atypical and significant hardship); Gonzelez v. Zickenfoose, 2014 WL 257850, * 2 (M.D. Penn. Jan. 23, 2014)(temporary loss of commissary, visitation, and email privileges, do not "implicate protected liberty interests as they do result in any atypical or significant hardships in relation to the ordinary incidents of prison life."); Alkebulanyahh v. Ozmint, 2009 WL 2043912, *9 (D.S.C. July 13, 2009), aff'd, 358 Fed.Appx. 431 (4th Cir. 2009)("[P]rison visitation does not implicate the standard set forth in Sandin."); Principio v. McGinnis, 2007 WL 2344872, * 2 (W.D.N.Y. Aug. 15, 2007)(finding that "60 days of keeplock with loss of telephone, packages, recreation and conjugal visits," was not an atypical or significant hardship); Richardson v. Johnson, 2001 WL 360843, * 1 n. 1 (N.D.Tex. April 5, 2001)(finding that phone-privilege restrictions, like commissary and recreation restrictions, do not impose a significant or atypical hardship on the inmate in relation to the ordinary incidents of prison life); James v. Odom, 2000 WL 1136563 *5 (S.D.Ala. May 30, 2000)(finding a 45-day restriction on inmate's "store, phone, and visiting privileges" did not constituted an atypical or significant hardship); Ozolina v. Durant, 1996 WL 82481, * 1 (E.D.Pa. Feb. 26, 1996)(Under Sandin, "there is no right to visitation protected by the Due Process Clause."); and White v. Keller, 438 F.Supp. 110, 114 (D.C.Md. 1997), aff'd, 588 F.2d 913 (4th Cir. 1978)("[T]here is no constitutional right to prison visitation, either for prisoners or visitors"). Accordingly, to the extent that Plaintiff is claiming his liberty interest in retaining e-mail and telephone privileges were violated, the undersigned finds that Plaintiff's claim is without merit.

**C.    *Liberty Interest in RDAP Placement and Early Release.***

To the extent Plaintiff alleges that he had a liberty interest in RDAP placement or his

early release, the undersigned will briefly consider his claim. Federal prisoners have no constitutional or inherent right to participate in rehabilitative programs while incarcerated. See Moody v. Daggett, 429 U.S. 78, 88, n. 9, 97 S.Ct. 274, 279, n. 9, 50 L.Ed.2d 236 (1976)("[N]o due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate. The same is true of prisoner classification and eligibility for rehabilitative programs in the federal system. Congress has given federal prison officials full discretion to control these conditions of confinement, 18 U.S.C. § 4081, and petitioner has no legitimate statutory or constitutional entitlement to invoke due process."). Likewise, "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, supra, 442 U.S. at 7, 99 S.Ct. at 2104; see also, Meachum v. Fano, 427 U.S. 215, 225, 96 S.Ct. 2532, 2539, 49 L.Ed.2d 451 (1976)("[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty."). Title 18, U.S.C. § 3621(e), however, vests the BOP with broad discretionary authority to reduce, by up to one year, the sentence of a federal prisoner convicted of a nonviolent offense, upon the successful completion of a substance abuse treatment program. 18 U.S.C. § 3621(e); see also Lopez, supra, 531 U.S. at 232, 121 S.Ct. at 718. The language of this statute which provides that a prisoner's sentence "may be reduced by the [BOP]," is clearly permissive; the statute does not *mandate* that the BOP reduce a prisoner's sentence upon completion of the substance abuse treatment program.[5] See

---

[5] It should be noted here that the BOP is required to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse." 18 U.S.C. § 3621(b). This obligatory command, however, does not extend to the granting of the incentive-based reduction of a prisoner's sentence for the successful completion of the substance abuse program.

Lopez, 531 U.S. at 240, 121 S.Ct. at 721(Affirming that the BOP "may exclude inmates whether categorically or on a case-by-case basis, subject of course to its obligation to interpret the statute reasonably, in a manner that is not arbitrary or capricious." (Citations omitted.)); Downey v. Crabtree, 100 F.3d 662, 670 (9th Cir. 1996)(Finding that 18 U.S.C. § 3621(e)(2)(B) "reflects unequivocal congressional intent to leave to the Bureau final decisions regarding whether to grant eligible inmates a sentence reduction following successful completion of a drug-treatment program."). Thus, as to substance abuse treatment programs, the BOP has wide discretion in determining both whether an inmate enters such a program in the first instance and whether to grant or deny eligible inmates a sentence reduction under Section 3621(e). See Pelissero, supra, 170 F.3d at 444. Courts have consistently held that inmates who successfully complete substance abuse treatment programs do not have a liberty interest in the provisional early release date and suffer no deprivation of due process rights as a result of the rescission of their consideration for early release. See Zacher v. Tippy, 202 F.3d 1039, 1041 (8th Cir. 2000)("The language of section 3621(e)(2)(B) is permissive, stating that the Bureau 'may' grant early release, but not guaranteeing eligible inmates early release."); Wottlin v. Fleming, 136 F.3d 1032, 1035 (5th Cir. 1998).

Further, Plaintiff does not possess a constitutionally protected expectation interest in receiving a sentence reduction. Such a subjective expectation does not arise to the level of a constitutional claim. See Mallette v. Arlington County Employees' Supplemental Ret. Sys. II, 91 F.3d 630, 635 (4th Cir. 1996)("[A] mere expectation of a benefit – even if that expectation is supported by consistent government practice – is not sufficient to create an interest protected by procedural due process. Instead, the statute at issue must create an entitlement to the benefit

22

before procedural due process rights are triggered."). Neither Section 3621(e), the BOP's

Program Statement (P.S. 5162.05), nor the Code of Federal Regulations (28 C.F.R. § 550.55),

contain explicit mandatory language or standards limiting the BOP's discretion, which may have

given rise to a protected liberty interest in early release.[6] See Kentucky Dept. of Corr. v.

Thompson, 490 U.S. 454, 109 S.Ct. 1904, 1909-10, 104 L.Ed.2d 506 (1989)(Regulations must

contain "explicitly mandatory language" to create a liberty interest.). Accordingly, Plaintiff does

not possess a statutorily protected expectation interest in early release.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and

accept the foregoing findings and **RECOMMENDS** that the District Court **DENY** Plaintiff's

Application to Proceed Without Prepayment of Fees and Costs (Document No. 1), **DISMISS**

Plaintiff's Complaint (Document No. 2), and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is

hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene

C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and

Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have fourteen (14) days

(filing of objections) and three (3) days (if received by mail) from the date of filing of this

Findings and Recommendation within which to file with the Clerk of this Court specific written

objections identifying the portions of the Findings and Recommendation to which objection is

made and the basis of such objection. Extension of this time period may be granted for good

---

[6]  Even upon completion of RDAP, the statute governing the substance abuse treatment program gives discretion to the BOP to determine whether a prisoner should be granted *any* reduction in sentence. *See* 18 U.S.C. § 3621(e)(2)(B).

cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*.

Date: June 10, 2019.

Omar J. Aboulhosn
United States Magistrate Judge